David Wayne LOESCH, Appellant,

v.

The STATE of Texas.

No. 814–96.

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1997.

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Brian Wice, Houston, Rober Bellows, Three Rivers, for appellant.

Jeffrey L. Van Horn, Asst. State's Atty., Matthew Paul, States's Atty., Austin, for the State.

1. Other factors cited by the Court of Appeals were either absent or cumulative of the above

*OPINION ON STATE'S PROSECUTING ATTORNEY'S PETITION FOR DISCRETIONARY REVIEW*

KELLER, Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and MANSFIELD, PRICE, HOLLAND, and WOMACK, Judges, joined.

Appellant entered a plea of "no contest" to possession of marijuana. He complained on appeal that the trial court erred in refusing to grant his motion to suppress. The Court of Appeals agreed and reversed. The State contends that the Court of Appeals improperly applied a *de novo* review standard on whether certain facts give rise to reasonable suspicion. The State also contends that the Court of Appeals erred, even under a *de novo* standard of review, because it viewed each of the factors relating to reasonable suspicion in isolation, instead of in combination with each other.

The following factors were evaluated by the Court of Appeals in determining whether reasonable suspicion exists:

(1) *Characteristics of the area:* A roving border patrol stopped appellant's vehicle along Highway 59, several miles beyond an immigration checkpoint. Two agents testified that illegal aliens are often smuggled through the area, and that they frequently walk through the brush around the checkpoint, and then catch rides with willing drivers on the other side.

(2) *Drivers' Behavior:* The patrol saw two vehicles riding bumper-to-bumper. Both drivers seemed nervous and rigid, staring straight ahead when the patrol car shined its headlights at the vehicles. When the patrol car approached, one of the vehicles sped up while the other slowed down— making pursuit of both vehicles difficult.

(3) *Aspects of the cars:* The vehicles in question were older cars with large trunks, commonly used to smuggle illegal aliens, and the cars looked weighed down, as if they were heavily loaded.[1]

█ The Court of Appeals basically conducted a deferential review of the historical

factors.

facts and a *de novo* determination of whether those facts give rise to reasonable suspicion. This review is consistent with our recent pronouncement in *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). However, in conducting its *de novo* review of the reasonable suspicion issue, the Court of Appeals has apparently examined each of the different factors in isolation to determine whether each militates in favor of or against a finding of reasonable suspicion. *See Loesch v. State*, 921 S.W.2d 405, 408–409 (Tex.App.—Corpus Christi 1996). Because reasonable suspicion is determined by the totality of the circumstances, an appellate court must look at all of the facts together to make the reasonable suspicion determination; facts that do not show reasonable suspicion in isolation may do so when combined with other facts. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885 n. 10, 95 S.Ct. 2574, 2582 n.10, 45 L.Ed.2d 607 (1975).

Moreover, the Court of Appeals has also apparently utilized the "as consistent with innocent activity as with criminal activity" construct in at least part of its opinion. *Loesch*, 921 S.W.2d at 409 (citing *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App. 1983)). We have recently disavowed the use of that construct. *Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App.1997).

█ We vacate the judgment of the Court of Appeals and remand this cause for proceedings consistent with this opinion.[2]

OVERSTREET, J., dissents.

BAIRD, Judge, dissenting.

The majority chooses to reverse the Court of Appeals opinion because, although the Court of Appeals used the correct *de novo* standard of review, it was incorrectly applied. Because the correct analysis has already been completed by the Court of Appeals with the appropriate deference to the trial court, I dissent.

## I.

Appellant was originally suspected by the U.S. Border Patrol of transporting undocumented aliens. Appellant aroused the suspicion of the agents because he was driving an older vehicle which appeared weighted down and was very close to another vehicle. Further, the vehicles were located several miles from an immigration checkpoint. The Court of Appeals gave deference to the historical facts of the trial court and conducted a review based upon the totality of the circumstances. *Loesch*, 921 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1996).

This Court has recently held "reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Cr.App.1997) (citing *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). As this Court opined, "if the issue is whether an officer had probable cause to seize a suspect, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Guzman*, at 87. A careful review of the Court of Appeals opinion reveals that the Court took every historical fact as the trial court found it. *Loesch*, 921 S.W.2d at 407. Only after the Court applied the proper legal analysis, was the trial court's decision determined erroneous. *Id.*, at 411. The Court held:

> ... [t]his court cannot warrant roving searched based on the nervous appearance of drivers in older cars who happen to drive down certain highways, absent other articulable facts which create reasonable suspicion. While we are of the opinion that the State did testify as to *some* of the

---

**2.** Judge Meyers contends that we depart from *Guzman* by remanding the case to the Court of Appeals instead of conducting our own *de novo* review. But he concedes that *Guzman* did not say that we *must* conduct such a review ourselves but merely stated that this Court "may exercise its *discretion*" to do so. *See* Meyers, J. dissenting in present case, op. at 834 n. 1 (*quoting Guzman*, at 89)(emphasis added). The application of law to facts is simply an aspect of a Court of Appeals' decision that we may choose to review or not review. Whether to conduct a *de novo* review or remand for the Court of Appeals to do so in the first instance is a discretionary matter and is governed by the same types of prudential considerations used in determining whether to grant review at all. And, as in all such discretionary decisions, we need not articulate our reasons for declining review.

criteria stated in *Brignoni–Ponce* which might, together with other factors justify reasonable suspicion, the totality of the circumstances in this case could not warrant the seizure and inspection of appellant's vehicle." *Id.*, at 410–11. (Emphasis in the original.)

The Court of Appeals applied the proper *de novo* standard of review in this case, accepting every issue of credibility in favor of the State, yet applying the proper legal analysis. As a court of *discretionary* jurisdiction, we must give all due deference to the courts of appeals when they properly conduct their reviews. When the Court of Appeals adequately and properly analyzes the issue, "there is no need for this court to reevaluate it." *Cofield v. State*, 891 S.W.2d 952, 957 (Tex.Cr.App.1994). It is not, and has never been, the function of this Court in non-capital cases to function as an intermediate appellate court. For that reason, when a Court of Appeals applies the proper standard, giving deference to the findings of the trial judge, we should not usurp their role.

## II.

Under controlling Supreme Court precedent, the Court of Appeals determined there was not reasonable suspicion to stop this vehicle. *See, United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Further, the Court of Appeals analyzed this case under current Texas law and held "there was no indication that [the border agent's] suspicions were anything more than a 'hunch' in this case, and therefore could not justify stopping appellant's car." *Loesch*, 921 S.W.2d at 410 (citing *Saenz v. State*, 842 S.W.2d 286, 288 (Tex.Cr.App.1992)).

The majority singles out certain aspects of the Court of Appeals opinion and singularly analyzes those points, without giving deference to the total *de novo* review of the Court of Appeals. For example, the majority's contention that the Court of Appeals used the wrong standard in looking at the "older vehicle" factor is disingenuous. *Ante*, at 831. The "as consistent with innocent activity test" was the standard when the case was decided and ultimately, there is only the

briefest of considerations of that standard. As we recently decided in *Woods v. State*, 956 S.W.2d 33 (Tex.Cr.App.1997), that test is no longer the standard. *Woods* states "that the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Id.*, 956 S.W.2d 33, 38.

The following historical facts give due deference to the trial court's determinations:

1. Two older cars
2. driving under 50 miles per hour
3. appearing heavily loaded
4. at 1:30 a.m.
5. many miles from an immigration checkpoint
6. with drivers not looking at passing police officers
7. and contemporaneously appearing nervous.

If this Court were to analyze the articulable facts and correctly apply the *Woods* "totality of the circumstances test" along with the *Brignoni–Ponce* factors, it appears many people are subject to lawful detentions if they happen to drive an older car slowly at night and don't look at a police officer driving by them. Under a *de novo* review, those factors do not give rise to reasonable suspicion.

Because the Court of Appeals correctly decided the issue giving deference to the findings of the trial court, I respectfully dissent to the majority holding otherwise.

MEYERS, Judge, dissenting.

The Court ignores precedent barely one month old in its disposition of this case. I dissent.

Although this case is virtually identical in every respect to *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997), the two cases are not disposed of in the same manner. In both the instant case and *Guzman*, the Court of Appeals applied the proper standard of review by conducting a *de novo*

review of the trial court's ruling on the mixed question of fact and law raised by the defendant's motion to suppress evidence. *Guzman*, at 87–88 (stating Court of Appeals decided *de novo* there was no probable cause); *Loesch v. State*, 958 S.W.2d 830, 831 (Tex.Crim.App.1997)(stating Court of Appeals conducted *de novo* determination of whether there was reasonable suspicion). In both cases, the Court faults the Court of Appeals' analysis, however, because the relevant factors were considered in isolation rather than as a totality. *Guzman*, at 87 (criticizing Court of Appeals for failing to apply totality of the circumstances test by "examin[ing] each fact independently and [finding] that none of the facts standing alone were sufficient to warrant a finding of probable cause" rather than considering the facts "taken as a whole"); *Loesch*, at 831 (criticizing Court of Appeals for examining factors "in isolation" rather than "look[ing] at all of the facts together"). In the instant case, the Court vacates and remands to the Court of Appeals to reconsider the issue. In *Guzman*, the Court specifically declined to send the matter back to the Court of Appeals for reconsideration, instead conducting our own *de novo* review of the issue. *Compare Guzman*, at 89, fn. 4 (Meyers, J., concurring and dissenting)(questioning role of this Court in "reviewing" decisions of courts of appeals and noting that "normally, when this Court determines that a court of appeals applied the wrong test or wrongly applied the proper test, we vacate and remand for that court to properly apply the proper test") *with Guzman*, at 95, fn. 3 (responding to Meyers' comments about "reviewing" decisions of courts of appeals and stating that this Court "reviews" decision by conducting *de novo* review and concluding "we disagree with the Court of Appeals and decide there was probable cause").

It was my position in *Guzman* that when the Court of Appeals applies the wrong law or the wrong standard of review, we ought to simply point to the problem in that court's analysis and remand the matter for reconsideration. But *Guzman* rejected that approach and *Guzman* is the law by which we are all bound.[1] The majority's opinion today makes no effort to distinguish or explain its departure from *Guzman*. The majority ought to offer a coherent and meaningful explanation as to when this Court will conduct its own *de novo* review and when we will remand for the Court of Appeals to do so. Until an explanation is provided so that I can tell how to decide which cases should be sent back and which cases should not, I will assume, per *Guzman*, that no such cases should be sent back.

I have no idea how this Court would decide the issue were we to conduct a *de novo* review. I will not invest my time, as a lone dissenter, conducting my own *de novo* review. However we might ultimately decide the issue, *Guzman* says *this Court* should decide it, *not* the Court of Appeals. I therefore dissent to the Court's order to vacate and remand.

---

1. Admittedly the majority in *Guzman* said that the courts of appeals and this Court "may" review these mixed questions of law and fact *de novo*, suggesting that the courts of appeals "may" also elect to review them differently or in the case of this Court, we "may" also elect not to review them at all. *Guzman*, at 89 ("the appellate court may review *de novo* 'mixed questions of law and fact'" and "[t]his Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts"). But no guidance is provided there or in the majority opinion today as to when the courts of appeals or this Court might elect *not* to conduct a *de novo* review. Until further insight on the matter, I will assume this Court should dispose of cases in the same manner as the Court in *Guzman*.