NO. 07-03-0468-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



OCTOBER 12, 2004


______________________________



ERNEST LaMONTE SMITH, 



 Appellant


v.



DANON LEE SMITH, 



 Appellee

_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 41,884-B; HON. JOHN B. BOARD, PRESIDING


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Ernest LaMonte Smith appeals from a judgment denying him recovery against his
sister, Danon Lee Smith. He had sued her for negligence to recompense personal injuries
suffered as a result of an auto accident. The vehicle, which Danon drove and in which
Ernest rode as a passenger at the time, left a sandy dirt road and struck a utility pole. 
Ernest testified that his sister had fallen asleep at the wheel. However, she stated that she
looked down to obtain a cassette tape when her brother "holler[ed]" her name." "When he
did, [she] instinctively hit the brake, . . . looked . . . went into this power slide, and started
hitting things." Upon hearing this and the other evidence presented by the parties, the jury
recessed to deliberate whether "the negligence, if any, of DANON . . . proximately cause[d]
the occurrence in question[.]" It answered: "no." Ernest now contends, through five
issues, that the verdict and judgment entered upon it were incorrect because Danon had
judicially admitted that she was negligent and that her negligence proximately caused the
accident. These admissions were purportedly conclusive and "undisputed." We overrule
the issues and affirm the judgment. 

 A judicial admission consists of a clear, deliberate, and unequivocal statement
made during the course of a judicial proceeding and contradicts or negates an essential
fact or defense asserted by the declarant. Kaplan v. Kaplan, 129 S.W.3d 666, 669 (Tex.
App.-Fort Worth 2004, pet. denied). And, until retracted, it must be accepted as true by
the court and jury. Id. 

 Here, the statements which Ernest believes evinced judicial admissions arose during
the following exchange:


 Did you fail to keep a proper lookout?




 Yes, sir. I wasn't looking at the road.




 If you had been using ordinary care, you would have been watching
where you were going?




 Yes, sir.



* * *




 If you had been watching where you were going, you wouldn't have
had the collision, would you?




 Probably not.


 

The first two answers of Danon purport to admit negligence and the third purports to admit
causation, according to Ernest. While we acknowledge that the questions and answers
at issue encompass those topics, we reject his contention that they alone conclusively
establish liability. 

 At the very least, the words "probably not" fall short of a clear, deliberate,
unequivocal statement regarding causation. Indeed, our Supreme Court recognized as
much when it stated, in Aultman v. Dallas Railway Terminal Co., 260 S.W.2d 596 (Tex.
1953), that the word "probably" "'leaves some room for doubt . . . .'" Aultman v. Dallas
Railway Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 600 (1953). Thus, if the word used
by Danon left "some room for doubt," then it cannot rise to the level of certainty inherent
in being unequivocal. See Webster's Third New International Dictionary 2494 (1976)
(defining "unequivocal" as "leaving no doubt").

 Nor can we say that the record erased the doubt inherent in the utterance. It shows
that when Danon was driving, her brother yelled out her name. This, according to Danon,
caused her to "instinctively" brake, which then led to the vehicle sliding across the sandy,
dirt road on which they drove. The jurors could well have considered Ernest's own action
and the "instinctive[]" response it induced in assessing who or what proximately caused the
accident. 

 In short, and at the very least, the utterance of Danon regarding causation was not
a judicial admission. And, neither it nor the other evidence of record "conclusively
establishes as a matter of fact that" Danon's conduct "was the proximate cause of the
collision," as posited by Ernest. Instead, it became the jury's task to peruse the evidence,
weigh it and the credibility of the witnesses, and determine the outcome. Finally, we
cannot say that its decision contradicted the overwhelming weight of the evidence or
evinced a manifestly unjust result, as Ernest also posits. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn 

 Justice 



inal activity results from having witnessed a criminal act, may be sufficient to provide\
an officer with probable cause to stop persons matching the description for investigatory\
purposes. Esco v. State, 668 S.W.2d 358, 360 (Tex.Crim.App. 1982). For purposes of\
this opinion, we will assume, without deciding, that the State’s evidence warrants a\
conclusion the information provided by Montoya was sufficiently reliable to form a basis for\
reasonable suspicion that the driver of the black pickup was connected with criminal\
activity. See State v. Griffey, 241 S.W.3d 700, 704-05 (Tex.App.–Austin 2007, pet. ref’d)\
(discussing reliability of information reported to police by citizen).
\
'

var WPFootnote5 = ' The Court of Criminal Appeals also noted in Brother that federal courts and lower\
Texas courts “have consistently held that a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, do not run afoul of\
the Fourth Amendment.” 166 S.W.3d at 259 (internal citations omitted).
\
'

var WPFootnote6 = ' The State’s brief urges that the trial court rationally could have inferred from the\
record that Larosa broadcast “a detailed description of the vehicle, including its make, color\
and license plate.” We see no basis in Larosa’s testimony for such an inference.
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-06-0154-CR

IN THE COURT OF APPEALS
 
FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 15, 2008
______________________________

TERENCE ELLIS CHANEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY;

NO. 692029; HONORABLE NANCY HOHENGARTEN, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant Terence Chaney appeals from the trial court’s denial of his pre-trial motion
to suppress evidence in his prosecution for driving while intoxicated. On appellant’s plea
of no contest after the motion to suppress was denied, the trial court sentenced appellant
to 180 days in jail probated for a period of two years. We will reverse.
 
 
Background 
          The evidence appellant sought to suppress was obtained after his vehicle was
stopped by an Austin police officer identified in the record as Officer Hernandez. 
Appellant’s motion asserted, inter alia, that the warrantless stop violated the Fourth
Amendment to the United States Constitution’s protection against unreasonable seizures. 
           The trial court held a hearing on the motion to suppress. Officer Hernandez did not
testify at the hearing. The State’s evidence was presented through the testimony of Officer
Michael Larosa. After the trial court’s denial of appellant’s motion, and his agreed no-contest plea and sentencing, the trial court certified his right to appeal its ruling on his pre-trial motion to suppress.



          Via his sole point of error, appellant renews his challenge to the constitutional
validity of the stop of his vehicle. He contends the State failed to demonstrate that Officer
Hernandez possessed articulable facts giving him a reasonable suspicion appellant had
violated the law.
Applicable Law
Standard of Review
          A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. 
Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). In a suppression hearing, the
trial court is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). Under the
applicable standard, we will review the record evidence and all reasonable inferences
therefrom in the light most favorable to the trial court’s ruling. Villarreal v. State, 935
S.W.2d 134, 139 (Tex.Crim.App. 1996); Taylor v. State, 20 S.W.3d 51, 54-55
(Tex.App.–Texarkana 2000, pet. ref’d).
          Accordingly, when reviewing an appeal from the trial court's denial of motion to
suppress, great deference is afforded to the trial court's decision on mixed questions of law
and fact that turn on an evaluation of credibility and demeanor. Guzman v. State, 955
S.W.2d 85, 89 (Tex.Crim.App. 1997). However, for mixed questions of law and fact which
do not fall within this category, an appellate court may conduct a de novo review of the trial
court's ruling. Hernandez v. State, 957 S.W.2d 851, 852 (Tex.Crim.App. 1998) (citing
Guzman, 955 S.W.2d at 89)). Additionally, the trial court’s determination of whether the
facts give rise to reasonable suspicion is reviewed de novo on appeal. Loesch v. State,
958 S.W.2d 830, 832 (Tex.Crim.App. 1997). Finally, if the trial court's decision is correct
on any theory of law applicable to the case, we will uphold that decision. Ross, 32 S.W.3d
at 855-56; Singleton v. State, 91 S.W.3d 342, 347 (Tex.App.–Texarkana 2002, no pet.).
          When the trial court, as here, does not file findings of fact concerning its ruling on
a motion to suppress, we assume that the court made implicit findings that support its
ruling, providing those implied findings are supported by the record. Maxwell v. State, 73
S.W.3d 278, 281 (Tex.Crim.App. 2002). We therefore review the evidence in a light most
favorable to the trial court’s ruling. Id., citing State v. Ballard, 987 S.W.2d 889
(Tex.Crim.App. 1999). 
Standard for Traffic Stop 
          It was the State's burden at the suppression hearing to show officers had at least
a reasonable suspicion that appellant had either committed an offense or was about to do
so before making the warrantless stop. Richardson v. State, 39 S.W.3d 634, 638
(Tex.App.–Amarillo 2000, no pet.). That determination is based on the totality of the
circumstances. We must look at all of the facts together to make the reasonable suspicion
determination. Loesch, 958 S.W.2d at 832.
          An investigatory stop of a vehicle or person by the police does not violate the Fourth
Amendment if articulable facts support a reasonable suspicion that the vehicle or person
stopped has been or is involved in criminal activity. United States v. Cortez, 449 U.S. 411,
101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A reasonable suspicion exists if a reasonable
person in the position of the officer making the stop, with the training and experience of the
officer, and with the knowledge possessed by the officer, could suspect that the vehicle or
person stopped has been or is connected to criminal activity. Cortez, 449 U.S. at 421-22. 
See also Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005) (“[r]easonable
suspicion exists if the officer has specific, articulable facts that, when combined with
rational inferences from those facts, would lead him to reasonably conclude that a
particular person actually is, has been, or soon will be engaged in criminal activity”). In
such a case, the officer may investigate by stopping the individual in order to determine his
identity, posing questions to him or detaining him briefly while attempting to obtain further
information. Delk v. State, 855 S.W.2d 700, 710 (Tex.Crim.App. 1993), cert. denied, 510
U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). 
Application
           Officer Larosa’s testimony at the suppression hearing was brief. As the trial court
announced its denial of appellant’s motion, the court said, “I do think that I can glean from
the testimony of the officer that there was information available to stop your client.” 
Reviewing de novo the trial court’s conclusion that evidence presented at the hearing was
sufficient for a reasonable suspicion finding, viewing the officer’s testimony in the light most
favorable to the court’s denial of the motion and giving effect to every reasonable inference
the trial court could have drawn from the testimony, we reach the contrary conclusion.
          Larosa testified that Officer Hernandez stopped appellant based on information from
a police “broadcast.” According to his testimony, the broadcast was made after Larosa
spoke with a civilian witness, Carlos Montoya, who reported he saw a black pickup truck
drive into a median area, strike a concrete sign and drive away. Larosa’s testimony does
not reveal where his conversation with Montoya occurred. Nor does Larosa’s testimony
describe, except in the most general way, what Montoya told him.


 Considering his
testimony as a whole, and in the light most favorable to the trial court’s ruling, the court
reasonably could have inferred Montoya reported the details we have described.


 
          The most specific information concerning Officer Hernandez’s basis for his stop of
appellant came from this exchange during Larosa’s testimony:
          Q:       [A]fter speaking with Mr. Montoya, did you later hear from Officer
Hernandez?
          A:       Yes.
          Q:       Did he inform you that he had stopped a truck matching the description?
          A:       Yes.
          Q:       And did he bring the driver of that truck to your location, or did you go to his
location?
          A:       I went to his location.
 
          Officer Larosa went on to testify to his encounter with appellant, his administration
of field sobriety tests and his conclusion that appellant was intoxicated. 
          Appellant and the State cite the statement in Amores v. State, 816 S.W.2d 407, 414
n.10 (Tex.Crim.App. 1991), that where a police radio broadcast is relied on as the basis
for a detention, the focus is usually on the information known to the dispatcher of the
broadcast.


 Case law establishes that an officer may stop a vehicle based at least in part
on facts supplied by another person. See, e.g., Brother v. State, 166 S.W.3d 255, 257
(Tex.Crim.App. 2005) (“factual basis for stopping a vehicle need not arise from the officer’s
personal observations, but may be supplied by information acquired from another
person”).


 
          The question here is whether the trial court was presented with articulable facts
sufficient to connect appellant with the unusual activity Montoya reported. We find it was
not. As noted, Larosa’s testimony at the suppression hearing told the trial court that
Montoya described what he saw, described the vehicle involved and described the driver. 
But the testimony did not give the court Montoya’s descriptions, providing only the meager
fact that a black pickup was involved.


 Similarly, the court was told that Hernandez reported
stopping “a truck matching the description.” But missing entirely from the testimony was
evidence of the specific, articulable facts that caused Hernandez to conclude the truck
matched “the description.” The court was not even told how near or far from Montoya’s
report, in time or distance, Hernandez’s stop of appellant occurred. Whether Larosa or
another officer made the broadcast, the evidence here did not give the trial court the facts
known to the broadcasting officer, or the facts included in the broadcast, nor did it show
the court how the broadcasted information led to Hernandez’s stop of appellant.
          In Ford, the Court of Criminal Appeals reiterated the necessity of evidence allowing
courts addressing motions to suppress to determine the circumstances by which an officer
has concluded that a person actually was, had been, or soon would have been engaged
in criminal activity. “When a trial court is not presented with such facts,” the court pointed
out, ‘the detention cannot be subjected to the more detached, neutral scrutiny of a judge
who must evaluate the reasonableness of a particular search or seizure in light of the
particular circumstances.’” Ford, 158 S.W.3d at 493, quoting Terry v. Ohio, 392 U.S. 1, 21,
88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finding the State did not meet its burden at the
suppression hearing to show Officer Hernandez had a reasonable suspicion that appellant
had committed an offense, we find the trial court abused its discretion by denying
appellant’s motion to suppress. Accordingly, we reverse the trial court’s judgment and
remand the cause for further proceedings consistent with this opinion.
 
                                                                           James T. Campbell

                                                                                    Justice









Do not publish.