COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-375-CR

 

 

BRETT BELCHER                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

                                              ------------      

I.  Introduction








Appellant Brett Belcher
raises two points challenging the trial court=s denial of his motion to suppress: (1) that his continued detention
by Officer Paul WillenbrockCan officer fully qualified to perform all aspects of a DWI
investigationCto await the
arrival of Officer Lisa Martin, the DWI Enforcement Officer for the Denton
Police Department, constituted an unreasonable detention in violation of the
Fourth Amendment and (2) that the trial court erred by permitting Officer
Willenbrock to testify at the suppression hearing because Officer Willenbrock
was not competent.  Giving almost total
deference to the trial court=s findings, viewing all of the evidence in the light most favorable to
the trial court=s ruling,
and considering the totality of the circumstances, we will affirm the trial
court=s ruling that Belcher=s continued detention was not unreasonable under the Fourth
Amendment.  Because we also hold that the
trial court did not err by admitting Officer Willenbrock=s testimony, we will affirm.

II.  Facts
Presented at Suppression Hearing and Procedural Posture

At the suppression hearing,
the trial court heard testimony from Officer Willenbrock, Officer Martin, and
Belcher.  The trial court also admitted
into evidence and viewed the recording of that night=s events taken from the video recorder in Officer Willenbrock=s patrol car, which was included on a DVD in the appellate record and
which we have also reviewed. 








Officer Willenbrock testified
at the suppression hearing that he is certified to conduct field sobriety
tests; he has been trained in the Horizontal Gaze Nystagmus (HGN).  On December 31, 2005, Officer Willenbrock was
working the 11:00 p.m. to 7:00 a.m. shift as a patrol officer.  At 2:40 a.m. on December 31, 2005, Officer
Willenbrock stopped a vehicle driven by Belcher because he had observed Belcher
commit several traffic offenses.  Officer
Willenbrock believed Belcher might be intoxicated, and two minutes into the
stop he contacted Officer Martin.[1]


Officer Willenbrock testified
that his intent in contacting Officer Martin was to have her Atake over the DWI investigation.@  He wanted Officer Martin to
take over the investigation because, Aa typical DWI can run four, four and a half hours, . . . where
[Officer Martin] can do it in half the time.@  The Denton County Police
Department does not have a policy that requires officers to contact Officer
Martin or to turn DWI investigations over to her, and Officer Willenbrock had
never previously called Officer Martin to take over a DWI investigation.  Officer Willenbrock expected that it would
take Officer Martin approximately five minutes to arrive at the scene. 








The DVD of the stop shows
that Officer Willenbrock stopped Belcher at 14:44, had Belcher exit his vehicle
at 14:46, and contacted Officer Martin at 14:47.[2]  The DVD indicates that for the next seven
minutes Officer Willenbrock asked Belcher routine questions that were related
in scope to Belcher=s detention
for the traffic offenses.  For example,
Officer Willenbrock asked Belcher whether he had any warrants out for his
arrest, how old he was, whether he had any weapons or drugs in his vehicle,
where he had been all day, and where he had been specifically during the three
hours before the stop. 

At 14:56 on the DVD, Officer
Willenbrock again contacted Officer Martin. 
At the suppression hearing, Officer Willenbrock testified that this
contact occurred approximately fifteen minutes after his first contact with
Officer Martin.  Officer Martin Aindicated to me [Officer Willenbrock] that she was involved in
another, a backup, backing up another officer on another type of stop and got
stuck at that scene and was still intending on coming to my location.@ 

From this point on, 14:56
until 15:23 on the DVDCi.e., the
next twenty-seven minutesCOfficer
Willenbrock asked no questions related in scope to the initial purpose of the
stop and asked no questions related to a DWI investigation.  During the suppression hearing, Officer
Willenbrock conceded that he had not diligently pursued a DWI investigation:

Q.  Officer, would you say you diligently pursued
your DWI investigation?

 

A.  Diligently pursued?

 

Q.  Yes.

 








A.  I didn=t run the investigation.  So I didn=t diligently pursue the       DWI investigation.

 

The DVD of the stop shows that at 14:58 during
this twenty-seven minute time period Belcher asked, AIs there a problem?@ and Officer Willenbrock indicated that there was no problem; he was
just waiting on his partner.  

At 14:59, nineteen minutes
into the stop, the DVD shows that Officer Willenbrock allowed Belcher to put on
a ski parka that he obtained from the backseat of Belcher=s vehicle.[3]  At 14:59 on the DVD, Officer Willenbrock
told  Belcher to Ahang tight, I am waiting for my partner to get here.@  Belcher asked whether he could
turn off his vehicle=s headlights
so that his vehicle=s battery
would not die, and Officer Willenbrock permitted him to do so.  Belcher then asked whether it was okay for
him to smoke a cigarette, and Officer Willenbrock permitted Belcher to smoke.  At 15:01 on the DVD, Belcher exclaimed, AI am freezing.@  At 15:01 on the DVD, Officer Willenbrock told
Belcher, AJust hang
out and smoke a cigarette; I=ll go talk to my partner, it should be just a minute.@   Belcher then pulled the hood
of his parka up over his head.  From
15:01 through 15:05, the DVD shows Belcher standing alone near his
vehicle.  Officer Willenbrock was in his
patrol vehicle.








At 15:05 on the DVD, Officer
Willenbrock returned to stand near Belcher and asked, AAre you pretty good at snow boarding?@  Belcher and Officer
Willenbrock discussed snowboarding for the next three minutes, and then at
15:08 on the DVD, Officer Willenbrock said, AI=m going to
see if she is almost here.@  Belcher asked if he could put
out his cigarette in his vehicle=s ashtray, and Officer Willenbrock permitted him to do so.

From 15:09 through 15:13 on
the DVD, Belcher stood by himself near his vehicle while Officer Willenbrock
returned to his patrol car.  A few dings
are audible, indicating further text messaging between Officer Willenbrock and
Officer Martin.  At 15:11 on the DVD,
Belcher asked for permission to answer his cell phone, which he heard ringing
in his vehicle.  Officer Willenbrock
permitted Belcher to answer his phone, and the DVD shows Belcher engaged in an
inaudible conversation on his cell phone. 


At 15:13 on the DVD, Officer
Willenbrock returned to stand near Belcher and said, AI appreciate your patience, she=s going to be here in just a minute.@  From 15:13 until 15:21, the
next eight minutes, Officer Willenbrock asked Belcher questions about snow
boarding in Colorado and about hunting. 
Finally, at 15:21 on the DVD, Officer Willenbrock said, ALet me go call her.@








The audio on the DVD is muted
from 15:21 until Officer Martin=s arrival, at approximately 15:23, thirty-nine minutes after the 14:44
stop of Belcher.  The tape was moved from
Officer Willenbrock=s vehicle to
Officer Martin=s vehicle,
and it shows Officer Martin approaching Belcher and saying, AI bet you=re tired of
waiting for me.@  Officer Martin then began her DWI
investigation,  conducting several field
sobriety tests.  After Belcher failed the
field sobriety tests, Officer Martin arrested him, processed him at jail, and
completed all the necessary paperwork. 
While Officer Martin transported Belcher to jail, Officer Willenbrock
waited for the tow truck to pick up Belcher=s vehicle and then returned to his patrol duties. 

Belcher filed a motion to
suppress all evidence seized as a result of the stop, alleging that he Awas detained longer than necessary to accomplish the purpose of the
stop@ and that Officer Willenbrock failed to do an investigation and
instead waited over thirty-five minutes for another officer to arrive and do
the DWI investigation.  At the
suppression hearing, Belcher stipulated that Officer Willenbrock=s actions in stopping him were justified at their inception, but he
argued that his continued detention to wait for Officer Martin was unreasonable
based on the totality of the circumstances given that Officer Willenbrock was
fully qualified to conduct the investigation himself. 

The trial court overruled
Belcher=s motion to suppress and made the following findings of fact and
conclusions of law: 

 








Findings of Fact

1.     On December 31, 2005, Officer Willenbrock initiated a traffic
stop of the Defendant=s
vehicle for traffic violations including excessive speed, failure to maintain a
single lane and failing to signal lane changes. 
Officer Willenbrock was further concerned that the Defendant may be
intoxicated due to the observed driving behavior.

 

2.     Upon making the traffic stop, Officer Willenbrock made contact
with the driver, the Defendant, and noticed an odor of alcohol coming from the
Defendant=s
person, the slurred speech of the Defendant and the Defendant=s red
and glassy eyes.

 

3.     Officer Willenbrock had the Defendant exit the vehicle to begin
a DWI investigation.  During the first
few minutes of conducting his DWI investigation, Officer Willenbrock contacted
Officer Martin requesting her assistance in performing the DWI investigation,
as his normal DWI investigation would have taken him at least (4) four hours to
complete. 

 

4.     Officer Martin arrived between thirty and thirty-five minutes
after receiving the initial call from Officer Willenbrock to come to the
location of the Defendent Belcher.  Once
on the scene Officer Martin took over the DWI investigation.  During the waiting period, Officer
Willenbrock asked questions of the Defendant which he considered pertinent to
his DWI investigation but did not perform any field sobriety tests.

 

5.     Officer Martin did not take any unnecessary or unreasonable
delay in reaching the scene.  Upon her
arrival Officer Martin performed her DWI investigation in an efficient and
timely manner and subsequently arrested the Defendant for DWI.

 








6.     Officer Willenbrock is a patrol officer for the Denton Police
Department whose duties include all facets of traffic enforcement, as well as,
responding to reported criminal activities and regular calls for service from
dispatch while on duty.  Officer Martin=s
primary duties consist of DWI enforcement, including but not limited to,
assisting other Denton Police Officers in conducting DWI investigations.

 

7.     Officer Martin testified that she has more experience and training
in DWI investigations than Officer Willenbrock. 
She further testified that, because of her training and experience, it
takes her approximately two hours to complete a DWI investigation.

 

8.     The Court finds all testimony of both Officer Willenbrock and
Officer Martin credible and reliable. 

 

Conclusions
of Law

 

1.     The Court finds that based on the totality of the circumstances
that Officer Willenbrock had reasonable suspicion to stop the Defendant=s
vehicle for traffic violations and was further permitted to conduct an
investigative detention for the misdemeanor offense of DWI.

 

2.     The Court further finds that based on the totality of the
circumstances that Defendant Belcher=s rights were not violated by
the thirty (30) to thirty-five (35) minute delay in the response time by
Officer Martin to the scene.

 

3.     The Court further finds that there were legitimate law
enforcement purposes served by requesting Officer Martin to respond to the
scene: (1) a more experienced DWI officer would handle the DWI investigation;
(2) the investigation time would be shortened by at least one-half; and (3)
allowed Officer Willenbrock to be available to receive other calls for police
related services.

 

4.     Based on the totality of the circumstances the initial stop by
Officer Willenbrock and Officer Martin=s arrival was not
unreasonable. 

 








Based on the foregoing findings, the Court
concludes that the suppression of evidence, of which suppression is sought, is
admissible and the defendant=s motion to suppress the
evidence is in all things DENIED.

 

After the trial court overruled his motion to
suppress, Belcher pleaded no contest to the DWI charge.  The trial court assessed Belcher=s punishment at 150 days in jail, suspended for eighteen months of
community supervision, with a $500 fine. 
Belcher now appeals.

III.  Standard of Review

We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  








Therefore, we give almost
total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68
(Tex. App.CFort Worth
2004, pet. ref=d).  The deferential standard of review applies to
a trial court=s
determination of historical facts when that determination is based on a
videotape recording admitted into evidence at a suppression hearing.  Montanez, 195 S.W.3d at 109. But when
the trial court=s rulings do
not turn on the credibility and demeanor of the witnesses, we review de novo a
trial court=s rulings on
mixed questions of law and fact.  Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652B53.

Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  Id. at 818B19.  We then review the trial
court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.








IV. 
Reasonableness of the Detention

In his first point, Belcher argues
that the trial court should have granted his motion to suppress because the
delay in Officer Willenbrock=s DWI investigation while they both waited for Officer Martin=s arrival rendered the continued detention unreasonable under the
Fourth Amendment.[4]  Belcher does not challenge the propriety of
the initial stop, but argues only that his subsequent detention became
unreasonably lengthy, and hence, unlawful. 
The State responds that the delay in Officer Willenbrock=s investigation ultimately promoted legitimate law enforcement
purposes and that, therefore, Belcher=s continued detention was not unreasonable under the Fourth Amendment.








On appeal, the question of
whether a specific search or seizure is Areasonable@ under the
Fourth Amendment as applied to the historical facts found by the trial court is
subject to de novo review.  Kothe v.
State, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).  Thus, in deciding whether Belcher=s continued detention to await the arrival of Officer Martin was Areasonable@ under the
specific circumstances presented, we view the trial court=s factual findings in the light most favorable to his ruling, but we
decide the issue of Areasonableness@ as a question of Fourth Amendment law.  Id. at 63.

A.  An Officer=s Ability to Detain a Citizen

The Fourth Amendment protects
against unreasonable searches and seizures. 
U.S. Const. amend.
IV.  It is well settled in Fourth
Amendment jurisprudence that absent a warrant or some functional equivalent
giving probable cause to arrest, only a limited, investigatory detention of an
individual is permitted.  Burkes v.
State, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991).  An investigative detention during the course
of a traffic stop in which the subject is not free to leave is a seizure for
purposes of the Fourth Amendment, and the appellate court must analyze the stop
under the reasonableness standard.  Whren
v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996).








Under Terry v. Ohio,
the determination of whether an investigative detention is reasonable is a
two-pronged inquiry: whether the officer=s action was justified at its inception and whether it was reasonably
related in scope to the circumstances which justified the interference in the
first place.  392 U.S. 1, 19B20, 88 S. Ct. 1868, 1879 (1968). 
This determination is a factual one and is made and reviewed by
considering the totality of the circumstances existing throughout the
detention.  Loesch v. State, 958
S.W.2d 830, 832 (Tex. Crim. App. 1997); see Kothe, 152 S.W.3d at 63.

B.  Detention During Delay in Investigation

Although the length of a
detention may render a traffic stop unreasonable, there is no rigid,
bright-line time limitation.  United
States v. Sharpe, 470 U.S. 675, 679, 105 S. Ct. 1568, 1571 (1985).  Instead, common sense and ordinary human
experience must govern over rigid criteria. 
Id. at 685, 105 S. Ct. at 1575. 
The reasonableness of the duration of a detention depends on whether the
police diligently pursued a means of investigation that was likely to confirm
or dispel their suspicions quickly, during which time it was necessary to
detain the defendant.  Id. at 686,
105 S. Ct. at 1575.  In determining the
reasonableness of the duration of a detention, the trial and appellate courts
may consider legitimate law enforcement purposes served by any delay in the
officer=s investigation.  Id. at
685, 105 S. Ct. at 1575.  Fourth
Amendment reasonableness requires a balance between the public interest served
and the individual=s right to
be free from arbitrary detentions and intrusions.  Kothe, 152 S.W.3d at 63.













Following these controlling
decisions, Texas courts likewise have held that a delay in an officer=s required investigation to confirm or dispel the officer=s suspicions of the suspect and a resultant prolonged detention is
reasonable under the Fourth Amendment when the delay furthers legitimate law
enforcement purposes.  See, e.g., Hartman
v. State, 144 S.W.3d 568, 573 (Tex. App.CAustin 2004, no pet.) (holding five-to fifteen-minute delay in DWI
investigation primarily so that another officer could bring a video camera to
the scene was reasonable because delay furthered legitimate law enforcement
purposes); Smith v. State, No. 03-06-00085-CR, 2007 WL 700834, at *1
(Tex. App.CAustin Mar.
7, 2007, pet. ref=d) (mem.
op.) (not designated for publication) (holding delay in DWI investigation primarily
for arrival of rookie officer for purpose of training was reasonable because
delay furthered legitimate law enforcement purposes); Dickson v. State,
No. 03-06-00126-CR, 2006 WL 3523789, at *1, 4 (Tex. App.CAustin Dec. 6, 2006, no pet.) (mem. op.) (not designated for
publication) (holding approximately twenty-minute delay in DWI investigation
primarily to await arrival of DWI enforcement officer was reasonable because
delay furthered reasonable law enforcement purposes).          In
the Hartman case, an officer stopped Hartman for speeding, but after
speaking with Hartman became concerned that he was intoxicated.  144 S.W.3d at 570.  The officer was qualified to conduct a DWI
investigation but radioed for another officer to come to the scene with a video
camera so that Hartman=s
performance during sobriety tests could be recorded in accordance with
department policy.  Id.  Although the trial court did not make
explicit findings of fact, the appellate court held that the officer=s purposes for the delay were to secure the scene, to comply with
department procedure, and to ensure officer safety.  Id. at 573.  Because of these legitimate law enforcement
purposes for the delay, the appellate court held that Hartman=s continued detention during the delay in the DWI investigation was
not unreasonable and that his Fourth Amendment rights were not violated.  Id.

In the Smith case, an
officer pulled Smith over for erratic driving and, upon approaching the
vehicle, became concerned that Smith was intoxicated.  2007 WL 700834, at *1.  Although the officer was qualified to perform
DWI investigations, he chose instead to call a rookie officer to the scene to
conduct the investigation as on-the-job training.  Id. 
Twenty-six minutes elapsed between the time of the stop and the time
when the rookie arrived at the scene.  Id.  In holding that this delay in the DWI
investigation did not render Smith=s continued detention unreasonable under the Fourth Amendment, the
appellate court noted that the first officer was a shift supervisor and that
turning the DWI investigation over to the rookie officer served the legitimate
law enforcement purposes of not only training the rookie but also of allowing
the shift supervisor to return to his supervisory duties to assist other
officers under his supervision.  Id.
at *4.








Finally, in the Dickson
case, an officer pulled over a vehicle driven by Dickson, an assistant district
attorney, on suspicion of DWI.  2006 WL
3523789, at *1, 4.  Because Dickson
identified himself as an assistant district attorney immediately upon being stopped,
the officerCwho was
fully qualified to conduct DWI investigationsCcalled his supervisor, and the supervisor instructed the officer to
call a DWI enforcement officer to conduct the DWI investigation.  Id. at *1. 
Eight minutes elapsed between the initial stop and the officer=s call for the DWI enforcement officer; twenty more minutes elapsed
before the DWI enforcement officer arrived at the scene.  Id.  The appellate court held that the continued
detention of Dickson during the twenty-minute delay in the DWI investigation
was reasonable because it furthered the legitimate law enforcement purposes of
involving an officer who would bring greater expertise to the scene and who
could complete the DWI investigation more rapidly.  Id. at *4.  The appellate court held that the delay did
not render the detention unreasonable because it was department policy to call
the DWI enforcement officer to the scene. 
Id.

C.  Application of the Law to the Present Facts








From the initial stop of
Belcher at 14:44 on the DVD until twelve minutes later, at 14:56 on the DVD,
Officer Willenbrock asked Belcher routine questions that were related in scope
to Belcher=s detention
for the traffic offenses and to a DWI investigation.  This portion of Belcher=s detention was unquestionably reasonable and did not violate any
aspect of the Fourth Amendment.  See,
e.g., Kothe, 152 S.W.3d at 63 (discussing police actions that may be
taken in connection with traffic stop).  

For the next twenty-seven
minutes,[5]
from 14:56 on the DVD until Officer Martin arrived at 15:23 on the DVD, a delay
in the DWI investigation occurred; Officer Willenbrock=s questioning of Belcher pertained to snow boarding and hunting.  It is this twenty-seven minute time period
that Belcher claims violated his Fourth Amendment rights becauseCalthough Officer Willenbrock was fully qualified to conduct the DWI
investigationCOfficer
Willenbrock was no longer investigating the traffic offense and was not further
investigating a possible DWI offense. 
According to Belcher, in the absence of an investigation, reversal is
required under Hartman.  144
S.W.3d at 574.  








Although the appellate court
in Hartman explained that A[a]n investigative detention requires an actual investigation; where
no investigation is undertaken, the detention cannot be considered
investigatory,@ the
appellate court in Hartman did not equate a delay in the investigation
for legitimate law enforcement purposes with no investigation.  Id. at 572.  Ultimately, the Hartman court held
that the continuation of a valid detention for a brief period of time to
further legitimate law enforcement purposes was reasonable under the Fourth
Amendment.  Id. at 573.  Legitimate law enforcement purposes include a
delay to permit the arrival of a DWI enforcement officer so that the
supervisory officer initiating the stop can return to duty, a delay for the
arrival of a video camera so that the DWI investigation and the field sobriety
tests can be taped in accordance with department procedures, and a delay for
the arrival of a rookie officer who needs training.  Id.; Smith, 2007 WL 700834, at
*4; Dickson, 2006 WL 3523789, at *4. 








Here, Officer Willenbrock
testified, and the DVD reflects, that when he spoke with Belcher at the
inception of the stop, Officer Willenbrock formed a reasonable suspicion that
Belcher was intoxicated.  Consequently,
Officer Willenbrock asked Officer Martin to come to the scene and conduct a DWI
investigation.  Although Officer
Willenbrock did not conduct field sobriety tests, the trial court made a fact
finding, and the DVD reflects, that Officer Willenbrock asked Belcher questions
in furtherance of the DWI investigation; he questioned Belcher concerning
whether he had been drinking, where he had been prior to the stop, and where he
was going.  Both Officers Willenbrock and
Martin testified that Officer Martin possessed greater expertise in DWI
investigations and was able to complete such investigations more efficiently
than Officer Willenbrock.  The trial
court made a fact finding that it would have taken Officer Willenbrock four
hours to complete the DWI investigation but that it takes Officer Martin only
two hours to complete a DWI investigation. 
Thus, the record viewed in the light most favorable to the trial court=s ruling reflects that a DWI investigation was underway when Officer
Willenbrock requested Officer Martin=s assistance at the scene and that a legitimate law enforcement
purpose was served by the delay in the DWI investigation that occurred while
awaiting the arrival of Officer Martin.  See,
e.g., Hartman, 144 S.W.3d at 573; Smith, 2007 WL 700834, at
*1 (same); Dickson,  2006 WL
3523789, at *1, 4 (same).








Having held that the record
supports the trial court=s
determination that a DWI investigation was underway and that the reason for the
delay in the DWI investigation was to further a legitimate law enforcement
purpose, we next examine whether the length of the delay, given the totality of
the circumstances, nonetheless rendered Belcher=s continued detention unreasonable under the Fourth Amendment.  We agree with Belcher that the apparent
twenty-seven minute delay he experienced waiting for the arrival of Officer
Martin approaches the edge of reasonableness under the Fourth Amendment.  But applying the fact-specific Fourth
Amendment standard for reasonableness, we note that the record shows Officer
Willenbrock expected Officer Martin to arrive within approximately five minutes
of his initial call.  He later learned
that Officer Martin had been delayed at the stop of another suspect but was Astill intending on coming to my location.@  Officer Willenbrock contacted
Officer Martin at least four timesCat least twice during this twenty-seven minute periodCin an attempt to ascertain Officer Martin=s whereabouts and her estimated time of arrival on the scene.  The record reflects that Officer Willenbrock
continually expected Officer Martin to arrive at any minute.  Additionally, Officer Willenbrock permitted
Belcher to smoke and to answer his cell phone during the detention, thus
reducing to some extent the level of intrusion generated by the detention. 








Balancing the public interest
served with Belcher=s Fourth
Amendment right to be free from arbitrary detentions and intrusions, as we
must, and giving almost total deference to the trial court=s historical fact findings, as we must, and viewing all of the
evidence in the light most favorable to the trial court=s ruling, as we must, we cannot conclude as a matter of Fourth
Amendment law that, given the totality of the circumstancesCincluding Officer Willenbrock=s close monitoring of Officer Martin=s whereabouts and estimated time of arrival at the scene and the
legitimate law enforcement purposes served by waiting for Officer MartinCthe continued detention of Belcher, while awaiting Officer Martin=s arrival, was unreasonable.  See
Sharpe, 470 U.S. at 679, 105 S. Ct. at 1575; Montanez, 195 S.W.3d at
108-09; Kothe, 152 S.W.3d at 63; see also Hartman, 144 S.W.3d at
570 (five-to fifteen-minute delay to await arrival of video camera); Smith,
2007 WL 700834, at *4 (twenty-six minute delay to await arrival of rookie
officer); Dickson, 2006 WL 3523789, at *4 (twenty-minute delay to await
arrival of DWI enforcement officer).  We
overrule Belcher=s first
point.

V.  Competency
of Officer Testimony

In his second point, Belcher
argues that Officer Willenbrock was not competent to testify at the suppression
hearing because he Ahad no
independent recollection of the night=s events and therefore no articulable reasonable suspicion and thus no
basis to treat the stop as a DWI investigation, rather than the original
purpose of investigating a traffic violation.@  Specifically, Belcher argues
that Officer Willenbrock=s lack of
independent knowledge of the night=s events made him not competent as a witness under Texas Rule of
Evidence 601. 








Texas Rule of Evidence
101(d)(1)(A) mandates that the rules of evidence do not apply in criminal proceedings
(except with respect to privileges) to Athe determination of questions of fact preliminary to admissibility of
evidence when the issue is to be determined by the court under [r]ule 104.@  Tex. R. Evid. 101(d)(1)(A). 
In turn, rule 104 states that 

[p]reliminary
questions concerning the qualification of a person to be a witness, the
existence of a privilege, or the admissibility of evidence shall be determined
by the court . . .  In making its
determination the court is not bound by the rules of evidence except those with
respect to privileges.

 

Tex. R. Evid. 104.

 

In interpreting this
language, the court of criminal appeals has held that because suppression
hearings involve the determination of preliminary questions referenced in rule
104, the rules of evidence (except for those rules concerning privileges) do
not apply to suppression hearings.  Granados
v. State, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002).  Accordingly, the trial court did not err by
allowing testimony during the suppression hearing without considering whether
such testimony violated the rules of evidence. 
Therefore, we overrule Belcher=s second point.[6]








VI.  Conclusion

Having overruled both of
Belcher=s points, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL
B: LIVINGSTON, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:
December 20, 2007











[1]In
several places on the DVD of Belcher=s stop, while Officer
Willenbrock is in his patrol car, a dinging sound is audible.  At the suppression hearing, Officer
Willenbrock identified this sound as text message chimes that were made when he
sent a text message to or received one from Officer Martin. 





[2]As
Officer Willenbrock noted, the times of the DVD are inverted.  Thus, 14:44, for example, references 2:44
a.m. rather than 2:44 p.m.

 





[3]Belcher
testified at the suppression hearing that the temperature that evening was in
the 30s; Officer Martin testified that it was Acold.@





[4]Where,
as in this case, the appellant has not separately briefed state and federal
constitutional claims, we assume that the appellant claims no greater
protection under the state constitution than that provided by the federal
constitution.  Muniz v. State 851
S.W.2d 238, 251-52 (Tex. Crim. App. 1993); Varnes v.  State, 63 S.W.3d 824, 829 (Tex.  App.CHouston [14th Dist.] 2001, no
pet.).  Therefore, we will analyze
Belcher=s
claim solely under the Fourth Amendment of the United States Constitution,
following guidelines set by United States Supreme Court in interpreting the
Fourth Amendment.  See State v. Guzman,
959 S.W.2d 631, 633 (Tex.  Crim.  App. 1998).





[5]Belcher
characterizes his unlawful detention as lasting thirty to thirty-five
minutes.   But because Belcher does not
challenge the legality of the initial stop, it necessarily follows that a valid
investigative detention based on the traffic violations and possible DWI
occurred for some period of time after the valid stop.  The DVD shows that at least the first twelve
minutes of the stop involved a proper investigative detention of Belcher for
the traffic offenses and for a possible DWI.





[6]Additionally,
the record reflects that Officer Willenbrock did possess an independent
recollection of his suspicion that Belcher was intoxicated based on Belcher=s
outward appearance and the odor of alcohol emanating from Belcher and his
vehicle.  Officer Willenbrock testified:

 

Q.     Did you eventually pull
the vehicle over?

A.     Yes, sir, I did.

Q.     Did you make contact with
the driver?

A.     I did.

Q.     Could you please identify
him by an article of clothing that he=s wearing?

[witness
complies]

Q.     When you fist made contact
with the defendant did you make any observations about him?

A.     Yes, sir.

Q.     What were those?

A.     I noticed that he had an
outward appearance of intoxication as well as the odor of alcohol coming from
the vehicle and from the person after I asked him to step out.

 

On cross-examination, Officer
Willenbrock testified:

 

Q.     You indicated from his
outward appearance that you believed 
Brett to be intoxicated?

A.     Yes.

Q.     Did you create any type of
report regarding the stop?

A.     No, I did not.

Q.     So when you say outward
appearance, that=s
just based on  your recollection that
night?

A.     Yes.